[Civil No. 2368. Filed October 5, 1926.]

[249 Pac. 745.]

E. E. PASCOE, as Executor of the Estate of QUIN FAULKNER, Deceased, ELIZABETH HARRIS, LAURA RICHARDSON, and GEORGE FAULKNER, a Minor, by His Guardian, LAURA RICHARDSON, Appellants, v. HUGHIE M. FAULKNER, EMMA FAULKNER PORTERIE, PEARL FAULKNER PATTERSON, as Administratrix of the Estate of EDWARD JOHN FAULKNER, Deceased, and ALICE M. BARKLEY, Appellees.

1. Husband and Wife—Where Father Invested Children's Interest in Deceased Mother's Interest in Community, Together With His Interest, and Borrowed Money, in Certain Land, Children Held Entitled to Share in Net Proceeds Thereof.—Children who permitted father to invest their interest in deceased mother's interest in community in certain land, in which he invested his interest in community, and also borrowed money, *held* entitled, after his death, to half of balance of proceeds from such land after paying debts incurred in purchasing and managing it.

2. Trusts.—Where father invested children's interest in deceased mother's interest in community in certain land, together with his own money, taking title in himself, trust arose in favor of children to extent of money used.

See (1) 31 C. J., p. 181, n. 35 New.    (2) 39 Cyc., p. 131, n. 92.

APPEAL from a judgment of the Superior Court of the County of Maricopa. M. T. Phelps, Judge. Judgment modified and affirmed.

Mr. Thomas W. Nealon, for Appellants.

Messrs. Phillips & Phillips and Messrs. Cox & Carson, for Appellees.

2. See 26 R. C. L. 1227.

ROSS, J.—Quin Faulkner and Ellen Faulkner, husband and wife, prior to 1912 were the owners of some farming land and farming equipment, dairy cattle and other personal property, which we will designate as the Faulkner ranch, situated and located in Maricopa county, Arizona. It was all community property. In that year Ellen Faulkner died. At the time of her death she left surviving her, besides her husband, seven children, the issue of her marriage with Quin Faulkner. She died intestate, and her one-half interest in the community was not administered upon nor otherwise settled until some time in the year 1918. In the interim between her death and the latter date the surviving husband and father lived with his children on the Faulkner ranch, and managed and used it and the personal property as he had done before the wife and mother died. In 1918, being able to realize a good price for the Faulkner ranch, he wanted to transmute it and the personal property into cash, and re-invest in other property in Phoenix and Maricopa county. He procured from all the children of age deeds conveying to himself their interests in and to their mother's real estate, and in October, 1918, sold and conveyed, by deed of conveyance signed by himself individually and as guardian of the minor children, the Faulkner ranch to one W. E. Mansell. He converted the community personal property into cash. The money realized out of the community or joint estate was by Quin Faulkner invested in certain real property situate in Phoenix and Maricopa county, the title to which was taken in his name.

This suit was brought by four of the children against Quin Faulkner and three of the children, who refused to join the plaintiffs, for the purpose of impressing such real property with a trust in favor of plaintiffs to the extent of their contribution toward

the purchase price. After suit was commenced, Quin Faulkner died, and his personal representative, E. E. Pascoe, was substituted in his place.

Plaintiffs Hughie M. Faulkner and Emma Faulkner (now Emma Porterie), who were of age at the time, alleged that they deeded their interest to their father upon his promise that he would invest whatever he might realize upon a sale of the Faulkner ranch, equipment, and personal property in other property which "would belong to said Quin Faulkner and his said children in the same proportion as they owned in the property to be sold."

The plaintiffs Edwin John Faulkner and Alice M. Faulkner (now Alice M. Barkley), who were minors at the time, but over fourteen years of age, requested the appointment of their father as guardian for the purpose of conveying their title in their mother's estate, upon their father's promise to invest the proceeds thereof in other property for the joint use and benefit of himself and the children, who "would receive and own the same interest in the property or properties so purchased as they owned in said property desired to be sold."

The confidential, fiduciary relation of trust and reliance between father and child are stated to have been present and the moving cause of the plaintiffs' deeding their interest to their father. It is stated that, notwithstanding such agreement and course of dealings, in May, 1920, their father refused to recognize plaintiffs' rights in and to property which he had bought with their joint funds, and refused to make any accounting thereof.

The answer raised various questions by plea in abatement, demurrers, general and special, plea in bar, general and specific denials, and affirmative matter.

The case was tried with a jury to which the controverted questions of fact were submitted in the

form of interrogatories, twenty-four in number, and to each and every one of them the answer was in favor of plaintiffs' contention.

The special verdicts of the jury were adopted by the court as its findings of fact, and judgment was entered establishing in each of the plaintiffs a one-fourteenth interest in the real estate in Quin Faulkner's name at the time of his death, or in the contract of sale where any of such property had been sold by Quin Faulkner upon deferred payment plan. In such judgment the executor was directed to account for rents, issues and profits received by him, or by Quin Faulkner in his lifetime, from or on account of any of such real estate. The judgment provided for the appointment of a commissioner to sell the real estate of which Quin Faulkner died seised, and to report sale to the court for approval and the proceeds for distribution. The defendants in the case have appealed and assigned 138 errors.

It developed upon the oral argument before us that the chief, if not the only, grievance of the defendants was that the judgment as entered did not provide that the interest of each of the plaintiffs was to be one-fourteenth of the net realized out of the Quin Faulkner estate. In other words, it appears from the record that Quin Faulkner had borrowed money which, together with what he obtained out of the community estate, was used to purchase property against which the trust is sought to be established. Some of such borrowed money, it is said by the executor, stands as debts against Quin Faulkner's estate, or as mortgages on such property. Also it is claimed that Quin Faulkner owed debts at the time of his death necessarily incurred by him in carrying on his real estate deals and transactions, and that such debts should be ascertained in the final accounting and deducted from the assets, and the one-fourteenth interest of each plaintiff should be calculated

upon the balance. The fairness and justice of this contention was conceded by the plaintiffs.

In view of the attitude of the parties, as expressed in the oral argument and the findings of fact by the jury and by the court, it seems to us that it would not only be a work of supererogation but a fruitless expenditure of toil to try to follow out the numerous assignments, involving the reading and digesting of the abstract, containing some 2,228 folios of dim typewritten matter, appellants' original brief of 357 pages, appellees' brief of 87 pages (single space), and reply brief of 38 pages, all typewritten.

The case pleaded and clearly made out was one of the children putting their money derived from their mother's estate, up with or against an equal amount contributed by their father, into his hands for investment by him, with the understanding and agreement that their interests should be and remain the same in property thereafter acquired as it was before such arrangement was entered into.

We cannot see any difference in legal effect in what was done than if the mother's one-half of the community, which went to the children upon her death, had been sold under court order for cash and the cash distributed to the children and by them thereafter handed to their father for investment in other property, for their use and benefit, along with his own funds. Certainly if he took his children's money and invested it in real estate, or other property, taking title in himself, a trust would arise in favor of the children to the extent their money was used. The evidence is so clear and convincing as to what was agreed to be done, and what was done, that we feel it is the duty of the court to see that such agreement be carried out, if there be no legal impediment in the way, and we are not convinced that there is any.

We think the judgment entered in the lower court might well bear the construction contended for by the defendants, but, in order that there may be no question upon the final accounting by the executor, we are remanding the case, with directions to the lower court that the judgment be therein amplified or amended, providing that on the final accounting the plaintiffs' shares shall be calculated on the *balance* left after paying all debts, secured or otherwise, incurred by Quin Faulkner in the purchase of the property, and all debts necessarily incurred by him in the effecting of deals and in the management of and caring for such property, and as thus modified the judgment be affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.